**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JERRY PUE, ) | |
| ) | CASE NO.  5:11-cv-02063 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Jerry Pue ("Pue") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Pue's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

### I. Procedural History

On November 21, 2009, Pue filed an application for POD, DIB, and SSI alleging a disability onset date of February 15, 2008.  His application was denied both initially and upon

reconsideration. Pue timely requested an administrative hearing.

On December 6, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Pue, represented by counsel, and an impartial vocational expert ("VE") testified. On January 5, 2011, the ALJ found Pue was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II.  Evidence

### *Personal and Vocational Evidence*

Age fifty-two at the time of his alleged disability onset date, Pue is a "person closely approaching advanced age" under social security regulations. *See* 20 C.F.R. §§ 404.1563(d) & 416.963(d). (Tr. 18.) Pugh is illiterate, and has past relevant work as a packager and machine operator. *Id*.

### *Hearing Testimony*

At the hearing, Pue testified as follows:

- He is fifty-five (55) years old, and weighs 224 pounds. (Tr. 33.)

- He lives with his sister and brother-in-law. He is divorced. (Tr. 34.) He thinks he has ten children, and all are adults. (Tr. 35.)

- He completed the twelfth grade, but later stated that he did not graduate. (Tr. 35, 47.) He was in special education classes. (Tr. 48.)

- He does not have a driver's license. (Tr. 35.)

- He quit his last job as a bell ringer for the Salvation Army because he could not handle the cold weather. (Tr. 36.) He lost a job at Serah Plastics because he could not stay awake. He could not recall the last time he applied for a job. (Tr. 37.)

- He has not applied for unemployment or workers' compensation. (Tr. 37.) He

  receives food stamps. (Tr. 37-38.)

- He has problems using his hands and can barely tie a knot. (Tr. 38.)

- He has pain in his legs and ankles, and cannot walk or stand for long. (Tr. 38.) His legs swell up if he walks too much. (*i.e.* four or five blocks.) (Tr. 39.) He later stated that he cannot walk more than two blocks without needing a break. (Tr. 49.)

- He is forgetful and sometimes even forgets to close the car or refrigerator door. (Tr. 39-40.)

- He suffers from pain in his ankles, legs, arms, hands, and shoulders. (Tr. 40.)

- He does not read well. (Tr. 41.) Later in the hearing, he stated that he cannot read or write. (Tr. 48-49.)

- He takes no medication other than his daily insulin shots. He has a prescription for blood pressure medication, but cannot afford to purchase the medication. (Tr. 42.)

- During a normal day, he does "mostly nothing." (Tr. 42.)

- He does not exercise, but used to perform squats. He stopped doing exercises the past summer when he was released from prison, because it became too painful. He was released on Christmas Day. (Tr. 43.)

- He uses a cane because his legs ache when he walks. (Tr. 44.)

- He smokes two packs of cigarettes weekly. (Tr. 45.)

- He no longer uses drugs or alcohol. (Tr. 45.)

- His last prison term was eighteen months for trafficking. (Tr. 46.)

- He experiences numbness in his toes, and has problems climbing stairs. (Tr. 49.)

- He can stand two hours without needing to sit down. (Tr. 50.)

- He has three "bad days" per week when he cannot function due to pain. (Tr. 50-51.)

- He could lift a gallon of milk, but not continuously for eight hours a day. (Tr. 52.)

3

- He has problems with his grip and occasionally drops things. (Tr. 52-53.)

The ALJ posed the following hypothetical question to the VE:

Please assume an individual the same age, education and work experience as the claimant.

This individual would be able to perform work at the medium exertional level with only being able to climb ladders, ropes, and scaffolds occasionally. And crawling occasionally. And frequently climb ramps or stairs, frequently balance, stoop, kneel and crouch. The – his reaching is – on the left is – he can perform frequently and his overhead reaching on the left side is occasional.

He can handle objects on the left side frequently and he can finger on the left side occasionally. And his feeling – ability to feel on both sides is constant. He should avoid concentrated use of moving machinery and avoid concentrated exposure to unprotected heights.

(Tr. 55.)

The VE testified that such an individual would be unable to perform Pue's past relevant work. (Tr. 56.) However, he testified that there are other jobs that such an individual could perform and gave the following examples: cleaner II, automobile detailer, and dining room attendant. (Tr. 56-57.)

The ALJ posed a second hypothetical question to the VE that added the following limitations to the first hypothetical:

And that is able to perform at the light level. And this would include a sit stand option allowing the person to sit or stand alternatively at will provided he is not off task more than 10 percent of the work period. And he would never be able to climb, ladders, ropes, or scaffolds. And never crawl. His overhead reaching would be – well, let's limit that at this point and leave the others the same.

(Tr. 57.)

The VE testified that such an individual could perform a number of light jobs and gave the following examples: cleaner/ housekeeping, office helper, and photocopy machine operator.

4

(Tr. 57-58.)  He testified that an additional limitation of never reaching overhead with the upper left extremity would not affect the jobs identified in response to the second hypothetical.  (Tr. 58-59.)

In response to a question posed by Pue's counsel, the VE testified that with any of the hypotheticals, if the individual was off-task fifteen percent of the time or missed two to three days per month, he would not be employable. (Tr. 59.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Pue was insured on his alleged disability onset date, February 15, 2008, and remained insured through March 31, 2009 . (Tr. 12.) Therefore, in order to be entitled to POD and DIB, Pue must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Pue established medically determinable, severe impairments, due to diabetes type 2, arthritis, carpal tunnel syndrome, coronary artery stenosis, and hypertension. (Tr. 12.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 14.) Pue was found incapable of performing his past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of medium work. (Tr. 14, 18.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Pue is not disabled. (Tr. 18-19.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.

*See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure

prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI.  Analysis

### *RFC and the Opinion of a Consultative Examining Physician*

In his first assignment of error, Pue argues that the ALJ should have accepted the April 22, 2010, opinion of Paul T. Scheatzle, D.O., the only examining consultative physician, or at least ascribed greater weight to his opinion than that of non-examining state agency physicians.  (ECF No. 15 at 7-9, *citing* Tr. 432-34.)  The Commissioner asserts that the ALJ reasonably accorded little weight to Dr. Scheatzle's assessment.  (ECF No. 17 at 3-5.)

Pursuant to the regulations, ALJs "are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. § 404.1527(e)(2)(i).  Nonetheless, because "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists," ALJs must consider their findings and opinions.  *Id*.  When doing so, an ALJ "will evaluate the findings using the relevant factors in paragraphs (a) through (d) of this section, such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions."  20 C.F.R. § 404.1527(e)(2)(ii).  Finally, an ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist" unless a treating physician's opinion has been

8

accorded controlling weight. *Id*. More weight is generally placed on the opinions of examining medical sources than on those of non-examining medical sources. *See* 20 C.F.R. § 416.927(d)(1). However, the opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight. *Hart v. Astrue*, 2009 WL 2485968, at \*8 (S.D. Ohio Aug.5, 2009). Thus, the ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians including weighing the supportability and consistency of the opinions, as well as the specialization of the physician. *See* 20 C.F.R. § 416.972(d), (f).

The ALJ, in addressing Dr. Scheatzle's opinion and those of the non-examining State Agency consultants, found as follows:

> As for the opinion evidence, on April 22, 2010, Mr. Pue underwent a State consultative examination with Dr. Paul T. Scheatzle. Dr. Scheatzle opined that Mr. Pue retains the ability to perform work at the light exertional level. In addition, Mr. Pue can handle things frequently, but should do no overhead work activities with the left arm and cannot climb or crawl. (7F) I give the opinion of Dr. Scheatzle little weight because it is based in large part on the subjective report of symptoms and limitations provided by the claimant. Yet, as explained elsewhere in this decision, there exists good reasons for questioning the reliability of the claimant's subjective complaints.

> On April 27, 2010, at the initial stage, and again on July 13, 2010, at the reconsideration stage, the State Agency consultants opined that Mr. Pue retained the ability to perform work at the medium exertional level with limited push/pull in the left upper extremity. Further, Mr. Pue is able to frequently climb ramps and stairs but only occasionally climb ladders, ropes and scaffolds. In addition, Mr. Pue is to avoid even moderate exposure to hazards, such as machinery and heights. (8F, 14F) I give the State Agency consultants' opinions significant weight because they had the benefit of Mr. Pue [sic] longitudinal medical history, because their opinions are consistent with the medical record as a whole, and because there are no treating source opinions to the contrary.

(Tr. 16.)

Pue's argument is that the ALJ should have credited Dr. Scheatzle's opinion, an examining but non-treating physician, over the opinion of non-examining physicians. (ECF No. 15.) Dr. Scheatzle's opinion, however, is not entitled to any special weight. "Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 WL 374180, *2 (Jul. 2, 1996). The ALJ specifically explained the weight ascribed to Dr. Scheatzle's opinion. (Tr. 16.) The Sixth Circuit has held that the regulation requiring an ALJ to provide good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of several examining physicians' opinions over others. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 506 (6th Cir. Feb. 9, 2006). The *Kornecky* Court found that:

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id*. While the regulations state that the Commissioner will "[g]enerally, ... give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you," it is the ALJ who is charged with a duty to evaluate all of the medical opinions in the record and resolve any conflicts that might appear. 20 C.F.R. §§ 404.1527(c)(4) & (e)(2). The regulations also state that the supportability of an opinion, as well as the extent to which a source is familiar with a claimant's other medical information of record, should also be factored into the decision of how much weight to ascribe to a medical source. 20 C.F.R. §§

404.1527(d)(3) & (6).

This Court cannot find that the RFC determination was unreasonable or not supported by substantial evidence simply because the ALJ ascribed greater weight to the opinion of non-examining physicians. RFC is an indication of an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 416.945(e). As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on *all* of the relevant evidence. *See* 20 C.F.R. § 416.945(a) (emphasis added). "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence." *Carter v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 40828 at \*\*21-22 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)). Moreover, a plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide basis for overturning the RFC determination. *Carter*, 2012 U.S. Dist. LEXIS 40828 at \*\*21-22.

The ALJ found that Dr. Scheatzle's opinion was not supported by medical signs and findings, but were based on Pue's own subjective complaints while the other consultative physicians based their opinions on the whole record. It is not this Court's function to reweigh the evidence. As such, Pue's first assignment of error is without merit.

***Medical Vocational Guidelines***

In his second assignment of error, Pue argues that, had the ALJ limited him to less than a full range of light work consistent with Dr. Scheatzle, the medical vocational guidelines would

11

have compelled a finding of disability. (ECF No. 15 at 9-10.) However, this Court did not find merit in Pue's argument that the ALJ erred by not adopting the opinion of the consultative examiner. Since the RFC did not limit Pue to less than the full range of light work, the guidelines do not compel a finding of disability.

*Mental Impairments as "Severe" Impairments*

Finally, Pue asserts that the ALJ erred by failing to classify his memory impairments as "severe." (ECF No. 15 at 10-11.) Specifically, Pue argues that a consultative psychiatrist, Michael J. Harvan, Ph.D., opined that he had "very poor" functioning in long term memory (both immediate and remote) and "fair" functioning in short term memory, resulting in a moderate impairment in his ability to understand and follow instructions. *Id. citing* Tr. 447, 449.

The ALJ did not include memory problems among the impairments that he found "severe." (Tr. 12.) The Sixth Circuit construes the step two severity regulation as a "*de minimis* hurdle," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Nonetheless, if the ALJ finds at least one impairment to be "severe," he must move on to the subsequent steps in the evaluation. He is not required to continue to analyze the remainder of the claimant's impairments to determine whether they too are severe. "[W]hen an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 577 (6th Cir. 2009) (*citing Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *accord Hickox v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 87813 at *13 (W.D. Mich. Aug. 2, 2010) ("The finding of at least

one severe impairment is sufficient to trigger further analysis. The ALJ's failure to find additional severe impairments at step 2 is 'legally irrelevant.'") (*quoting McGlothin v. Comm'r*, 299 Fed. Appx. 516, 522 (6th Cir. 2008)).

However, construing Pue's argument as a whole, it appears that he is arguing that the RFC, or more accurately the hypothetical question, was incomplete because it did not make any provision for the moderate impairment in his ability to understand and follow instructions as found by Dr. Harvan. A hypothetical question must precisely and comprehensively set out every physical and mental impairment of the applicant that *the ALJ accepts as true and significant*. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (emphasis added). Where the hypothetical question is supported by the evidence in the record, it need not reflect unsubstantiated allegations by claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

The accuracy of the RFC and hypothetical, however, depends upon the weight ascribed to Dr. Harvan's opinions. The ALJ directly addressed Dr. Harvan's assessment and ascribed it "little weight," explaining that it was based, in large part, on Pue's subjective report of symptoms and limitations. (Tr. 16.) The ALJ concluded that the reliability of Pue's self-reported symptoms and limitations was questionable, and Dr. Harvan's opinion was not consistent with Pue's fair cognitive functioning and GAF score. *Id*.

Pue has not alleged any procedural impropriety with respect to the ALJ's treatment of Dr.

13

Harvan's opinion - a non-treating consultative examiner. Even if he had, Pue's mere disagreement with the weight the ALJ ascribed does not provide basis for overturning the RFC determination. It is not this Court's function to re-weigh the evidence and incorporate limitations the ALJ rejected. Because the ALJ's RFC and hypothetical need only incorporate limitations that he finds to be warranted by the record, Pue's assignment of error is without merit.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.


/s/ Greg White
U.S. Magistrate Judge

Date: June 15, 2012.